Javier L. Merino
DannLaw
372 Kinderkamack Road, Suite 5
Westwood, NJ 07675
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CHRISTIAN VANDER VLIET,** | **Case No.:** |
| **Plaintiff,** | **Judge:** |
| **vs.** | **COMPLAINT FOR DAMAGES** |
| **NEWREZ, LLC D/B/A SHELLPOINT MORTGAGE SERVICING; SERVIS ONE, INC. D/B/A BSI FINANCIAL SERVICES,** | **JURY DEMAND ENDORSED HEREON** |
| **Defendants.** | |

Plaintiff Christian Vander Vliet ("Plaintiff" or "Vander Vliet"), by and through counsel, states as follows for his Complaint against Defendants Newrez, LLC d/b/a Shellpoint Mortgage Servicing, LLC ("Shellpoint") and Servis One, Inc., d/b/a BSI Financial Services ("BSI") (collectively, "Defendants"):

### WHY VANDER VLIET IS FILING THIS COMPLAINT

1.     Shellpoint engaged in unconscionable conduct by breaching Vander Vliet's trial period plan which forced an imminent sheriff's sale on his home and caused him ascertainable financial loss. BSI engaged in conduct perpetuating Shellpoint's mistakes and failed to the minimal standards of conduct for mortgage servicers which caused Vander Vliet great financial damage, humiliation, suffering, stress, and emotional distress, further damage to his credit

standing. Defendants' conduct further forced Vander Vliet to incur attorneys' fees, all of which will appear more fully, *infra*.

**PARTIES, JURISDICTION, AND VENUE**

2.      Vander Vliet is the owner of real property and improvements thereon located at and commonly known as 109 Willshire Dr., Tinton Falls, NJ 07724 (the "Home").

3.      Vander Vliet currently maintains the Home as his primary, principal residence, and has so maintained the Home for all times relevant to these allegations.

4.      BSI is the current servicer of a note (the "Note") and mortgage on the Home that allegedly secures the Note (the "Mortgage") (collectively, the "Loan"). A copy of the Loan is attached as ***Composite Exhibit 1.***

5.      Shellpoint is the predecessor servicer of the Loan and serviced the Loan at all times relevant to these allegations prior to the transfer of servicing rights to BSI.

6.      Vander Vliet obtained the Loan for household purposes, namely the purchase of the Property that he occupied as his primary residence.

7.      Shellpoint is doing business in the State of New Jersey as a business entity operating as a collection agency, and is a "debt collector" as the term is defined by 15 U.S.C. §1692a(6).

8.      BSI is doing business in the State of New Jersey as a business entity operating as a collection agency, and is a "debt collector" as the term is defined by 15 U.S.C. §1692a(6).

9.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), the Real Estate

Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (RESPA), and the Fair Debt Collection

Practices Act, 15 U.S.C 1692, et seq. (FDCPA").

10.    This action is filed to enforce regulations promulgated by the Consumer Finance

Protection Bureau (CFPB) that became effective on January 10, 2014, specifically, 12 C.F.R. §

1024.1, *et seq.* of Regulation X.

11.    This action also arises out of Shellpoint's and BSI's violations of the FDCPA.

12.    This Complaint is filed to enforce regulations promulgated by the Consumer

Financial Protection Bureau (CFPB) that became effective on January 10, 2014, specifically, 12

C.F.R. § 1024.1, *et seq.* of Regulation X.

13.    Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as Vander Vliet

maintains the Property and resides within this District, Defendants each do business within this

District, and the conduct giving rise to the causes of action in this Complaint, *infra*, occurred

primarily within this District.

## SUMMARY OF CLAIMS

14.    Congress enacted the FDCPA to prohibit the "[u]se of abusive, deceptive, and

unfair debt collection practices." 15 U.S.C § 1692(a).

15.    Vander Vliet asserts a claim for relief against Shellpoint and BSI for breaches of

the specific rules under the FDCPA as set forth, *infra*.

16.    Vander Vliet has a private right of action under the FDCPA pursuant to 15 U.S.C.

§ 1692k(a) for the claimed breaches and such action provides for remedies including actual

damages, statutory damages, and attorneys' fees and costs

17.     In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010)

18.     Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

19.     The Loan is a "federally related mortgage loan" as that term is defined by 12 C.F.R. § 1024.2(b).

20.     Shellpoint is subject to the aforesaid regulations and does not qualify for the exemption for "small servicers", as defined in 12 C.F.R. § 1026.41(e)(4).

21.     Shellpoint is not a "qualified lender", as defined in 12 C.F.R. § 617.700.

22.     Vander Vliet asserts claims for relief against Shellpoint for breaches of the specific rules under Regulation X as set forth, *infra*.

23.     Vander Vliet has a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed breaches and such actions provide for remedies including actual damages, costs, statutory damages, and attorneys' fees.

24.     Vander Vliet also assert common law claims against Shellpoint and BSI for breach of contract and breach of the duty of good faith and fair dealing.

25.     Additionally, Vander Vliet assert statutory claims for violations of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2 ("CFA") against Shellpoint.

**FACTUAL BACKGROUND**

26.     During 2019, Vander Vliet experienced income-related hardships and applied for a loan modification through Shellpoint.

27.     On February 17, 2019, Tiffiny Gist ("Gist"), a loss mitigation specialist for Shellpoint, advised Vander Vliet, through email correspondence, to "[m]ake your Trial or Repayment plan payment on our automated system online." A copy of the email chain is attached as ***Exhibit 2***.

28.     This email was the first time Shellpoint advised Vander Vliet that he was approved for a loan modification trial period plan (the "TPP"). However, Shellpoint's email failed to provide Vander Vliet with any details about the terms of the TPP, including the amount of the TPP payment, the due dates for the payment, and whether a signed agreement was required.

29.     On February 18, 2019, Vander Vliet responded to Gist and requested details concerning the amount of the TPP payments, the due dates for the TPP payments, and a copy of the TPP. *See Exhibit 2*.

30.     A few hours later, Gist responded, alleging that Shellpoint mailed out the TPP letter on January 14, 2019, and Vander Vliet's first TPP payment was due 2/1/19 in the amount of $2,410.78. Nonetheless, she advised Vander Vliet that "I can still accept payment with no late fees for this month. There is no paperwork to sign until after your trial is complete...Please call to make your payment or you may go online to our website and make payment as well." *See Exhibit 2*.

31.     On or about February 20, 2019, Vander Vliet contacted Shellpoint to make his first payment under the TPP in the amount of $2,410.78. During this call, Vander Vliet provided

specific instructions to Shellpoint to withdraw the payment from a joint Wells Fargo Checking Account he shares with his father, Guy Vander Vliet (the "Joint Account") and otherwise instructed Shellpoint to withdraw $2,410.78 from the Joint Account as opposed to the default account Vander Vliet had on file with Shellpoint.. Shellpoint provided Vander Vliet with confirmation number 417752 for this payment.

32.     Upon information and belief, Shellpoint attempted to process the payment out of the default bank account instead of the Joint Account despite Vander Vliet's instructions, as demonstrated by Shellpoint's transaction history showing the February 20, 2019 payment was rejected NSF. A copy of Shellpoint's transaction history is attached as ***Exhibit 3***.

33.     Shellpoint's mishandling of the payment is further evidenced by the Joint Account bank statement which reveals that as of February 20, 2019, the Joint Account had sufficient funds to process the February 2019 TPP $2,410.78 payment. A copy of the statement is attached as ***Exhibit 4***.

34.     Through correspondence dated March 19, 2019, Shellpoint advised Vander Vliet that his February 2019 TPP payment was rejected because"[we] have been notified of a returned item from your financial institution in the amount of $2,237.60". A copy of the notice is attached as ***Exhibit 5***.

35.     Thereafter, Shellpoint advised Vander Vliet that the old TPP was rejected and also told him that he was required to submit supporting documents in order to obtain a new trial period plan.

36.     Accordingly, on or about April 7, 2019, Vander Vliet submitted a new loss mitigation application to Shellpoint via facsimile. A copy of the cover letter is attached as ***Exhibit 6***.

37.     On or about April 16, 2019, Lucy Brooks, a Loss Mitigation Specialist at Shellpoint ("Brooks"), sent email correspondence to Vander Vliet confirming receipt of the April 7, 2019 submission and requesting various documents for Shellpoint to complete its review of the submission. A copy of the email is attached as ***Exhibit 7***.

38.     On or about April 23, 2019, Brooks sent email correspondence to Vander Vliet re-confirming the documents requested by and through the April 23, 2019 email submission. A copy of the email is attached as ***Exhibit 8***.

39.     On or about April 26, 2019, Vander Vliet submitted, via facsimile, the documents Shellpoint requested by and through their April 16 and April 23 emails. A copy of the fax confirmation and cover letter is attached as ***Exhibit 9***.

40.     On May 18, 2019, Shellpoint sent Vander Vliet email correspondence with the subject line "Payment Alert for April" and advising him "We recently approved you for a loss mitigation plan and would like to remind you of your payment." A copy of the email is attached as ***Exhibit 10***.

41.     At no point between April 7, 2019 and May 18, 2019 did Shellpoint send Vander Vliet correspondence advising him he was approved for a loan modification trial period plan.

42.     Confused, Vander Vliet sent Brooks email correspondence on May 20, 2019, asking Shellpoint to clarify the terms of the trial plan and instructions for payment. A copy of the email is attached as ***Exhibit 11***.

43.     On May 21, 2019, Brooks responded to Vander Vliet's email correspondence and claimed "[y]ou had been approved four different times for Trial Payments. All failed: you never made one payment. The last plan was in April. The letter you received was solicitation to preserve your home. On 5/14 a Denial Letter was generated to go out to you. I am sorry. Maybe we need to look at another option." *See Exhibit 11*.

44.     On May 30, 2019, Vander Vliet sent correspondence to Brooks via facsimile, outlining his frustrations with Shellpoint's multiple trial period plan mistakes. A copy of the letter is attached as ***Exhibit 12***.

45.     Instead of correcting their mistakes, Shellpoint proceeded to schedule a foreclosure auction on Vander Vliet's home for August 5, 2019. A copy of the sheriff's sale docket is attached as ***Exhibit 13***.

46.     Left with no choice, Vander Vliet retained counsel to gather information regarding Shellpoint's mistakes and file the instant suit to remedy them.

47.     On or about July 8, 2019, Vander Vliet, through counsel, sent correspondence to Shellpoint captioned "Request for Information Pursuant to 12 C.F.R. § 1024.36" (the "RFI") via U.S. Certified Mail [Tracking No.: 7018 2290 0000 9611 6107]. A copy of the RFI is attached as ***Exhibit 14***.

48.     Vander Vliet sent the RFI to the address designated by Shellpoint for the receipt of such notices pursuant to 12 C.F.R. § 1024.36(b) (the "Shellpoint Address").

49.     Through the RFI, Vander Vliet sought various documents and information related to the servicing of his account. *See Exhibit 14*.

50.     According to USPS Tracking, Shellpoint received the RFI at the Shellpoint Address on July 15, 2019. A copy of the USPS Tracking information is attached as ***Exhibit 15***.

51.     Through correspondence dated July 26, 2019, Shellpoint responded to the RFI (the "RFI Response"). However, the RFI was materially deficient in that Shellpoint failed to provide a number of the items requested by and through the RFI. A copy of Shellpoint's response is attached as ***Exhibit 16***.

52.     Accordingly, on or about August 20, 2019, Vander Vliet, through counsel, sent Shellpoint correspondence captioned "Notice of error pursuant to 12 C.F.R. §1024.35(b)(11) for failure to properly respond to a request for information in compliance with 12 C.F.R. §1024.36" (the "NOE"). A copy of the NOE is attached as ***Exhibit 17***.

53.     Vander Vliet sent the NOE via USPS Certified Mail [Tracking No. 7018 2290 0000 9611 6534]. A copy of the USPS Tracking is attached as ***Exhibit 18***.

54.     Through the NOE, Vander Vliet advised Shellpoint that the RFI Response was materially deficient in that it failed to provide numerous items requested by and through the RFI which are directly related to the servicing of the Loan.

55.     On or about August 27, 2019, the servicing of the Loan transferred from Shellpoint to BSI. A copy of the servicing transfer notice is attached as ***Exhibit 19***.

56.     Due to Shellpoint's actions in breaching the TPP and scheduling the sheriff's sale on Vander Vliet's home, Vander Vliet was forced to use both of his statutory adjournments at a cost of $28.00 per adjournment to adjourn the sheriff's sale from August 5, 2019 to September 30, 2019. Presently, BSI seeks to cause Vander Vliet's home to be sold at auction on September 30, 2019. *See Exhibit 13*.

## IMPACT AND DAMAGE TO VANDER VLIET

57.     Shellpoint's actions in failing to honor the TPP terms caused Vander Vliet to incur additional attorneys' fees and costs in defending the foreclosure and otherwise attempting to obtain information and correct errors.

58.     Shellpoint directly and proximately caused the following damage to Vander Vliet:

A.  The lost opportunity to save his home by paying  the TPP and entering into a permanent modification;

B.  He had to retain and pay legal counsel to assist in preventing Defendants from conducting the sheriff's sale and submit the RFI and NOE to Shellpoint and pay postage costs for the mailing of the RFI and NOE;

C.  Extreme emotional distress directly and proximately caused by Shellpoint's actions in failing to honor the TPP.

59.     BSI's actions in perpetuating Shellpoint's failures by also failing to honor the TPP terms and taking actions to advance the foreclosure auction caused Vander Vliet to incur additional attorneys' fees and costs in defending the foreclosure and otherwise attempting to obtain information and correct errors.

60.     BSI directly and proximately caused the following damages to Vander Vliet:

A.  The lost opportunity of saving his home by paying theTPP and entering into a permanent modification of his loan; and

B.  Extreme emotional distress directly and proximately caused by Shellpoint's actions in failing to honor the TPP.

61.     Throughout this entire ordeal, Vander Vliet has simply wanted the benefit of a permanent loan modification and to resume making timely, proper payments on the Loan in order to begin to rehabilitate his credit, and most importantly, retain his Home.

**PATTERN AND PRACTICE OF REGULATION X VIOLATIONS BY SHELLPOINT**

62.     Shellpoint's actions are part of a pattern and practice of behavior in violation of Vander Vliet's rights and in abdication and contravention of Shellpoint's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

63.     At the time of the filing of this Complaint, Shellpoint Partners, LLC, Shellpoint's parent company, has had more than Five Hundred Eighty-Four (584) consumer complaints lodged against it nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database. (http://www.consumerfinance.gov/complaint database/)

**COUNT ONE: AGAINST BOTH**
**BREACH OF CONTRACT**

64.     Vander Vliet restates and incorporates all of his statements and allegations contained in paragraphs 1 through 63, in their entirety, as if fully rewritten herein.

65.     The TPP is a contract between Vander Vliet and Shellpoint. *See Exhibit #.*

66.     Shellpoint breached the TPP by failing to properly process Vander Vliet's February 2019 TPP payment. *See Exhibits 2, 3, 4.*

67.     Vander Vliet dutifully performed his obligations pursuant to the TPP by timely calling in and making his first TPP payment. *See Exhibits 2, 3, 4.*

68.     Shellpoint has breached the contract in bad faith. This is evidenced by the fact that Shellpoint first failed to timely send Vander Vliet a written copy of the TPP then thereafter refused to properly process his February 2019 TPP Payment.

69.     As pled, *supra*, Vander Vliet has been harmed by, and continues to suffer from harm resulting from Shellpoint's breaches of the TPP by refusing to honor the terms of the agreement, taking away an opportunity for Vander Vliet to obtain a permanent loan modification.

70.     Vander Vliet was forced to retain counsel to aid in enforcing the agreement reached under the TPP, including incurring attorneys' fees and postage costs in preparing and mailing the RFI and NOE.

71.     In addition, Shellpoint's intentional and outrageous conduct has caused Vander Vliet to suffer extreme emotional distress driven by the fear that he might be forced to leave the Home, which has resulted in loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

72.     Vander Vliet's extreme emotional distress is a foreseeable result of Shellpoint's breaches of the TPP.

73.     As a result of Shellpoint's actions, Shellpoint is liable to Vander Vliet for actual damages and specific performance of the TPP.

## COUNT TWO: AGAINST SHELLPOINT
### VIOLATION OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

74.     Vander Vliet restates and incorporates all of his statements and allegations contained in paragraphs 1 through 63, in their entirety, as if fully rewritten herein.

75.     Shellpoint was in privity of contract with Vander Vliet, through the Loan and TPP, and as such was obligated by contract and common law to act in good faith and to deal fairly with Vander Vliet. *See Exhibit 2.*

76.     The purpose of the covenant of good faith and fair dealing is to guarantee that the parties remain committed to the intended and agreed upon expectations of the parties in their performance.

77.     Shellpoint as breached this duty by failing to honor the terms of the TPP and refusing to properly process Vander Vliet's TPP payments.

78.     Shellpoint has acted in bad faith, dishonestly, and with an improper motive to injure the rights of Vander Vliet.

79.     Due to Shellpoint's conduct, Vander Vliet has suffered actual damages, including but not limited to, legal fees and expenses to retain counsel to prepare the RFI and NOE, and to ultimately to prepare, file, and prosecute this case to remedy Shellpoint's wrongful conduct.

80.     Vander Vliet has suffered, and continue to suffer, significant damages including other legal expenses, other economic loss, as well as anxiety, loss of sleep, and emotional and mental distress.

81.     As a result of Shellpoint's actions, Shellpoint is liable to Vander Vliet for specific performance of the TPP.

## <u>COUNT THREE: AGAINST SHELLPOINT</u>
## <u>VIOLATION OF N.J.S.A § 56:8-2, THE CONSUMER FRAUD ACT (CFA)</u>

82.     Vander Vliet restates and incorporates all of his statements and allegations contained in paragraphs 1 through 63, in their entirety, as if fully rewritten herein.

83.     The CFA prohibits:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate...

N.J.S.A. § 56:8-2.

84.     In the operation of its business, Shellpoint has engaged in the use of unconscionable commercial practices, as described, *supra*.

85.     Each unconscionable practice, false promise, misrepresentation and/or knowing omission of material fact by Shellpoint described, *supra*, constitutes a separate violation under the CFA.

86.     Vander Vliet is a "person" as defined by N.J.S.A. § 56:8-1(d) as he is a natural person.

87.     Shellpoint is a "person" as defined by N.J.S.A. § 56:8-1(d) because Shellpoint is a partnership, corporation, company, trust, business entity, or business association.

88.     Vander Vliet, relying on the express terms of the TPP, complied with all the obligations as required by those agreements by instructing Shellpoint to withdraw the initial payment. *See Exhibits 2, 3, 4*.

89.     Despite Vander Vliet having complied with the terms of the TPP, Shellpoint has refused to honor the TPP.

90.     Shellpoint's refusals to honor the TPP constitute false promises, misrepresentations, and/or unconscionable acts under the CFA.

91.     Shellpoint's actions in intentionally advancing the Foreclosure Matter while failing to implement the TPP constitute false promises, misrepresentations, and/or unconscionable acts under the CFA.

92.     Shellpoint's unconscionable commercial practices have caused Vander Vliet the following ascertainable losses:

    A.   He had to retain and pay legal counsel to contest the Foreclosure Matter and submit the RFI and NOE to Shellpoint and pay the postage cost of the RFI and NOE;

    B.   He suffered extreme emotional distress directly and proximately caused by Shellpoint's actions in failing to implement the TPP; and

    C.   The lost opportunity of saving his home through a permanent loan modification.

**COUNT FOUR: AGAINST SHELLPOINT**
**VIOLATION OF 12 C.F.R 1024.36 (FAILURE TO PROPERLY RESPOND TO A REQUEST FOR INFORMATION)**

93.     Vander Vliet restates and incorporates all of his statements and allegations contained in paragraphs 1 through 63, in their entirety, as if fully rewritten herein.

94.     12 C.F.R. § 1024.36(a) provides:

> A servicer shall comply with the requirements of this section for any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan.

95. Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower."

96. 12 C.F.R. §1024.36(d)(1) provides that a servicer must respond to a request for information by either "[p]roviding the borrower with the requested information and contact information, including a telephone number, for further assistance in writing" or "[c]onducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance."

97. Furthermore, 12 C.F.R. § 1024.36(d)(2)(i) provides that:

> A servicer must comply with the requirements of paragraph (d)(1) of this section:
> (A) Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan; and
> (B) For all other requests for information, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request.

98. Vander Vliet sent the RFI to the Shellpoint Address.

99. Shellpoint received the RFI on July 15, 2019. *See Exhibit 15*.

100. The RFI constituted a request for information pursuant to 12 C.F.R. § 1024.36 as it contained a request for information relating to the servicing of the Loan. *See Exhibit 14*.

101. Through the RFI, Vander Vliet requested of Shellpoint:

> 1. An exact reproduction of the life of loan mortgage transaction history for this loan from the contract system of record from

your electronic software program for this loan. For purposes of identification, the life of loan transaction history means any software program or system by which the servicer records the current mortgage balance, the receipt of all payments, the assessment of any late fees or charges, and the recording of any corporate advances for any fees or charges including but not limited to property inspection fees, broker price opinion fees, legal fees, escrow fees, processing fees, technology fees, or any other collateral charge. Also, to the extent this life of loan transaction history includes in numeric or alpha-numeric codes, please attach a complete list of all such codes and state in plain English a short description for each such code.

2.  Copies of any and all servicing notes related to your servicing of the above-referenced mortgage loan from July 1, 2017.

3.  Copies of any and all broker's price opinions you performed or otherwise obtained for the above-referenced property in relation to the above-referenced mortgage loan.

4.  A true and accurate copy of the original note related to the above-referenced mortgage loan.

5.  A detailed copy of your last two (2) analyses of the escrow account of the mortgage.

6.  A copy of an accurate and up-to-date reinstatement quote and/or reinstatement letter showing the exact amount needed to cure any default or delinquency on the above-referenced loan as well as a date through which such amount is to remain good and valid.

7.  Each date upon which you received a loss mitigation application, whether complete or incomplete, from the Borrower regarding the Loan from January 10, 2014 to the present. Please note that, pursuant to 12 C.F.R. § 1024.41(b)(1), a "complete loss mitigation application" is defined as "an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower.

8.  A copy of any written correspondence that you sent to the Borrower pursuant to or otherwise in compliance with 12 C.F.R. § 1024.41(b)(2)(i)(B) regarding the Loan from January 10, 2014 to the present. In other words, please provide a copy of any written correspondence you sent to the Borrower notifying the Borrower as to whether any submitted loss mitigation application was complete or incomplete, and if incomplete, stating what documentation and/or information was necessary to complete such application.

9.  A copy of any written correspondence that you sent to the Borrower pursuant to or otherwise in compliance with 12 C.F.R. § 1024.41(c)(1)(ii) regarding the Loan from January 10, 2014 to the present. In other words, please provide a copy of any written correspondence you sent to the Borrower notifying the Borrower as to which loss mitigation options, if any, you would offer the Borrower on behalf of the owner or assignee of the mortgage.

10. A copy of all trial period payment plans, loan modification agreements, or loss mitigation agreements otherwise that you have offered to the Borrower, regardless of whether they were accepted or rejected by the Borrower.

11. Each date upon which you received an executed loss mitigation agreement from the Borrower regarding the Loan from January 10, 2014 to the present.

12. Each date upon which you received or otherwise came into possession of an appeal of loss mitigation eligibility from the Borrower regarding the Loan from January 10, 2014 to the present.

13. A copy of any written correspondence that you sent to the Borrower pursuant to or otherwise in compliance with 12 C.F.R. § 1024.41(h)(4) regarding the Loan from January 10, 2014 to the present. In other words, provide a copy of any written correspondence you sent to the Borrower stating your determination of whether you would offer the Borrower a loss mitigation option based upon an appeal of your denial of the Borrower's eligibility for any loss mitigation option.

102.   Shellpoint sent correspondence in response to the RFI dated July 26, 2019. *See Exhibit 16*.

103.   The RFI Response failed to provide the following information requested in the RFI:

2.  Copies of any and all servicing notes related to your servicing of the above-referenced mortgage loan from July 1, 2017.

3.  Copies of any and all broker's price opinions you performed or otherwise obtained for the above-referenced property in relation to the above-referenced mortgage loan.

[...]

5.  A detailed copy of your last two (2) analyses of the escrow account of the mortgage.

6. A copy of an accurate and up-to-date reinstatement quote and/or reinstatement letter showing the exact amount needed to cure any default or delinquency on the above-referenced loan as well as a date through which such amount is to remain good and valid.

7. Each date upon which you received a loss mitigation application, whether complete or incomplete, from the Borrower regarding the Loan from January 10, 2014 to the present. Please note that, pursuant to 12 C.F.R. § 1024.41(b)(1), a "complete loss mitigation application" is defined as "an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower.

8. A copy of any written correspondence that you sent to the Borrower pursuant to or otherwise in compliance with 12 C.F.R. § 1024.41(b)(2)(i)(B) regarding the Loan from January 10, 2014 to the present. In other words, please provide a copy of any written correspondence you sent to the Borrower notifying the Borrower as to whether any submitted loss mitigation application was complete or incomplete, and if incomplete, stating what documentation and/or information was necessary to complete such application.

9. A copy of any written correspondence that you sent to the Borrower pursuant to or otherwise in compliance with 12 C.F.R. § 1024.41(c)(1)(ii) regarding the Loan from January 10, 2014 to the present. In other words, please provide a copy of any written correspondence you sent to the Borrower notifying the Borrower as to which loss mitigation options, if any, you would offer the Borrower on behalf of the owner or assignee of the mortgage.

10. A copy of all trial period payment plans, loan modification agreements, or loss mitigation agreements otherwise that you have offered to the Borrower, regardless of whether they were accepted or rejected by the Borrower.

11. Each date upon which you received an executed loss mitigation agreement from the Borrower regarding the Loan from January 10, 2014 to the present.

12. Each date upon which you received or otherwise came into possession of an appeal of loss mitigation eligibility from the Borrower regarding the Loan from January 10, 2014 to the present.

13. A copy of any written correspondence that you sent to the Borrower pursuant to or otherwise in compliance with 12 C.F.R. § 1024.41(h)(4) regarding the Loan from January 10,

2014 to the present. In other words, provide a copy of any written correspondence you sent to the Borrower stating your determination of whether you would offer the Borrower a loss mitigation option based upon an appeal of your denial of the Borrower's eligibility for any loss mitigation option

104.    To date, Shellpoint has not sent, nor has Vander Vliet received any further notice from Shellpoint containing or consisting of the information Shellpoint failed to provide in the RFI Response, and more than thirty (30) business days have elapsed since July 15, 2019.

105.    Shellpoint's actions, in failing to provide proper written correspondence to Vander Vliet in response to the RFI within thirty (30) business days of July 15, 2019, constitute a willful violation of 12 C.F.R. § 1024.36(d).

106.    Shellpoint's actions are believed to be a part of a pattern and practice of behavior in conscious disregard of Vander Vliet's rights.

107.    As a result of Shellpoint's actions, Shellpoint is liable to Vander Vliet for statutory damages and actual damages as a result of this violation as further described, *supra*, 12 U.S.C. § 2605(f)(1).

108.    Additionally, Vander Vliet requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT FIVE: AGAINST SHELLPOINT
### VIOLATIONS OF 15 U.S.C. §§ 1692, *et seq.*

109.    Vander Vliet restates and incorporates all of his statements and allegations contained in paragraphs 1 through 63, in their entirety, as if fully rewritten herein.

110.    Vander Vliet is a "consumer" as he is a natural person and resident of Monmouth County, New Jersey obligated or allegedly obligated to pay the Loan. 15 U.S.C. § 1692a(3).

111.    The Loan is a "debt" because it is an obligation or alleged obligation of Vander Vliet to pay money arising out of a transaction primarily for personal, family, or household purposes- Vander Vliet purchased the Home for his primary, principal residence. 15 U.S.C. § 1692a(5).

112.    Shellpoint is a "debt collector" because it regularly collects or attempts to collect on the Loan and other mortgage loans. 15 U.S.C. § 1692a(6).

113.    Shellpoint's actions in refusing to honor the TPP and scheduling Vander Vliet's foreclosure auction constitute false representations of the character, amount, or legal status of the Loan. 15 U.S.C. § 1692e(2)(A).

114.    Shellpoint's actions in refusing to honor the TPP and scheduling Vander Vliet's foreclosure auction constitute the use of false representations or deceptive means to collect or attempt to collect on the Loan. 15 U.S.C. § 1692e(10).

115.    As a consequence of Shellpoint's actions, Vander Vliet suffered actual damages, specifically the loss of the TPP, additional past due amounts, fees, charges to the Loan, and extreme emotional distress relating to Shellpoint's failure to honor the TPP.

116.    As a result of Shellpoint's actions, Shellpoint is liable to Vander Vliet for actual damages and statutory damages. 15 U.S.C. § 1692k(a)(1).

117.    Additionally, Vander Vliet requests reasonable attorneys' fees and costs incurred in connection with this action. 15 U.S.C. § 1692k(a)(3).

## COUNT SIX: AGAINST BSI
## BREACH OF CONTRACT

118.    Vander Vliet restates and incorporates all of his statements and allegations contained in paragraphs 1 through 63, in their entirety, as if fully rewritten herein.

119.    The TPP is a contract between Vander Vliet and Shellpoint, and therefore the TPP is also a contract between Vander Vliet and BSI. *See Exhibits 2, 3, 4.*

120.    Shellpoint breached the TPP by failing to properly process Vander Vliet's February 2019 TPP payment. *See Exhibits 2, 3, 4.*

121.    BSI now refuses to honor the TPP by instead advancing the foreclosure sale on Vander Vliet's home.

122.    Vander Vliet dutifully performed his obligations pursuant to the TPP by timely calling in and making his first TPP payment. *See Exhibits 2, 3, 4.*

123.    BSI has breached the contract in bad faith. This is evidenced by the fact that BSI seeks to sell Vander Vliet's home on September 30, 2019.

124.    As pled, *supra*, Vander Vliet has been harmed by, and continues to suffer from harm resulting from BSI's breaches of the TPP by refusing to honor the terms of the agreement, taking away an opportunity for Vander Vliet to obtain a permanent loan modification.

125.    Vander Vliet was forced to retain counsel to aid in enforcing the agreement reached under the TPP.

126.    In addition, BSI's intentional and outrageous conduct has caused Vander Vliet to suffer extreme emotional distress driven by the fear that he might be forced to leave the Home, which has resulted in loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

127.    Vander Vliet's extreme emotional distress is a foreseeable result of BSI's breaches of the TPP.

128.    As a result of BSI's actions, BSI is liable to Vander Vliet for actual damages and specific performance of the TPP.

## COUNT SEVEN: AGAINST BSI
## VIOLATIONS OF 15 U.S.C. §§ 1692, *et seq.*

129.    Vander Vliet restates and incorporates all of her statements and allegations contained in paragraphs 1 through 63, in their entirety, as if fully rewritten herein.

130.    Vander Vliet is a "consumer" as he is a natural person and resident of Monmouth County, New Jersey obligated or allegedly obligated to pay the Loan. 15 U.S.C. § 1692a(3).

131.    The Loan is a "debt" because it is an obligation or alleged obligation of Vander Vliet to pay money arising out of a transaction primarily for personal, family, or household purposes- Vander Vliet purchased the Home for his primary, principal residence. 15 U.S.C. § 1692a(5).

132.    BSI is a "debt collector" because it regularly collects or attempts to collect on the Loan and other mortgage loans. 15 U.S.C. § 1692a(6).

133.    BSI's actions in refusing to recognize the TPP and attempting to proceed with the September 30, 2019 foreclosure auction constitute false representations of the character, amount, or legal status of the Loan. 15 U.S.C. § 1692e(2)(A).

134.    BSI's actions in attempting to proceed with the September 30, 2019 foreclosure auction constitute the use of false representations or deceptive means to collect or attempt to collect on the Loan. 15 U.S.C. § 1692e(10).

135.    As a consequence of BSI's actions, Vander Vliet suffered actual damages, specifically the loss of the TPP, additional past due amounts, fees, charges to the Loan, and extreme emotional distress relating to BSI's failure to honor the TPP.

136.    As a result of BSI's actions, BSI is liable to Vander Vliet for actual damages and statutory damages. 15 U.S.C. § 1692k(a)(1).

137.    Additionally, Vander Vliet requests reasonable attorneys' fees and costs incurred in connection with this action. 15 U.S.C. § 1692k(a)(3).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Christian Vander Vliet prays that this Court enter its order granting judgment against Defendant Newrez, LLC d/b/a Shellpoint Mortgage Servicing for the following:

A.    Actual damages in an amount to be determined at trial for the allegations contained in all Counts;

B.    Statutory damages of Two Thousand Dollars ($2,000.00) for the allegations contained in Count Four;

C.    Statutory damages of One Thousand Dollars ($1,000.00) for the allegations contained in Count Five;

D.    Treble damages as to Count Three;

E.    Additional damages for Holloway's extreme emotional distress as to Counts One and Three;

F.    Reasonable attorneys' fees and costs as to Counts Two through Five;

G.    Specific performance as to Counts One and Two; and,

H.    Such other relief which this Court may deem appropriate.

**WHEREFORE**, Plaintiff Christian Vander Vliet prays that this Court enter its order granting judgment against Defendant Servis One, Inc., d/b/a BSI Financial Services, for the following:

A.     Actual damages in an amount to be determined at trial for the allegations contained in all Counts;

B.     Statutory damages of One Thousand Dollars ($1,000.00) for the allegations contained in Count Seven;

C.     Reasonable attorneys' fees and costs as to Count Seven; and,

D.     Such other relief which this Court may deem appropriate.

Respectfully submitted:

/s/ Javier L. Merino
Javier L. Merino
DannLaw
372 Kinderkamack Road, Suite 5
Westwood, NJ 07675
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiff Christian Vander Vliet*